Howard Branklin CHAPMAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17650.

United States Court of Appeals
Fifth Circuit.

Nov. 10, 1959.

Rehearing Denied Dec. 17, 1959.

Guy R. Dunn, Hapeville, Ga., for appellant.

Charles D. Read, Jr., Acting U. S. Atty., John W. Stokes, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before HUTCHESON, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Chapman was indicted and tried on a two count indictment charging him with willfully and knowingly possessing sugar and rye meal which were intended for use in the manufacture and production of nontaxpaid distilled spirits in violation of § 5686 of the Internal Revenue Code of 1954, 26 U.S.

C.A. § 5686.[1] The jury acquitted him on the first count and convicted him on the second, and imposition of sentence was suspended for one year during which he was placed upon probation; from this judgment he prosecutes this appeal, assigning a large number of alleged errors of the court below.

These may be grouped into the contentions that the evidence was not sufficient to warrant the conviction, that he was a victim of entrapment, and that certain evidence was wrongfully admitted consisting of testimony of a telephone conversation and the submission of a tape recording to the jury.

Chapman was in the baking business and the federal investigators, having received reliable information that sugar for making bootleg whiskey was being sold by him, started an undercover investigation to determine whether this was true. Two of the agents posed as bootleggers. Their first approach to appellant was by telephone conversation, which was followed by visits on the part of the officers. The officers advised him that they desired the sugar for use in connection with their moonshine liquor still and the question of delivery was discussed. Appellant suggested that the officers use a dealer's tag on their truck, but they declined, countering with the suggestion that appellant place his own tag on the officers' truck, which was done. They discussed also what disposition the officers would make of the empty bags and appellant was satisfied when he was advised that they would be burned.

Appellant drove the officers' truck, bearing his tag, to the wholesale establishment and brought back to them twenty-one bags of sugar, which he sold them for $12.25 a bag, representing a profit of $3.00. The officers also purchased twenty pounds of yeast for $8.00.

About five days later one of the officers telephoned appellant asking to purchase fifteen bags of sugar, but appellant suggested that the number be increased to thirty-five, and they finally compromised on a deal for twenty-five bags of sugar plus two bags of rye meal and twenty pounds of yeast, all of these being ingredients commonly used in making bootleg liquor. Appellant suggested that the delivery be not made at his bakery, but that the officers come to his house after dark, which they did.

While the officers were engaged in transferring the sugar from appellant's truck to their own, along with the rye meal and yeast which appellant had brought from his house, two other federal agents, by prearrangement, arrived on the scene and asked appellant what was going on. He told them that he was moving the sugar to one of his bakeries and that he had employed the two undercover agents for this purpose. He stated that he did not know their names and that he had never sold them any sugar or had any dealings with them prior to that date. He was thereupon arrested. He made certain admissions to the officers while en route to town.

Most of the foregoing testimony given by the government agents was denied by appellant and the Government, in rebuttal, introduced a recording made by the officers with a small wire recorder which was secreted on one of them.

■ From this brief outline it is clear that there was ample evidence upon which the jury could find appellant guilty of possessing the sugar, rye and yeast which was in the process of being loaded when he was arrested, and that this property was intended for use in violating the provisions of law quoted in Footnote 1 supra.

1. § 5686. (b) "Penalty for having, possessing or using liquor or property intended to be used in violating provisions of this chapter.—It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this chapter, or regulations prescribed thereunder, or which has been so used, and every person so having or possessing or using such liquor or property, shall be liable to a fine not to exceed $5,000 or to imprisonment for not more than 1 year, or both."

▮ We think there can be no doubt about the admissibility of the admissions made by appellant to the officers or that there were sufficient facts and circumstances to identify appellant as the person with whom the telephone conversation with Agent Kelley was had. Cf. Enzor v. United States, 5 Cir., 1958, 262 F.2d 172, certiorari denied 359 U.S. 953, 79 S.Ct. 740, 3 L.Ed.2d 761. The same is true as to appellant's blanket charge that the "District Court erred time and again by permitting prejudicial and irrelevant evidence," the record references not bearing out appellant's contentions in any degree.

▮ Appellant urges his objections to reception in evidence of the transcription of conversations between the officers and appellant on the occasions when they were bargaining for or receiving delivery of the sugar, as made by a recording device secreted under the shirt of one of the agents. Every step in the making of the transcription was carefully safeguarded by the officers, and if their testimony was to be believed, the transcript offered to the jury was a true and correct reproduction of what was said by the participants in these proceedings. The court inquired diligently into the various steps and satisfied itself that the proffered transcription was free from suspicion as to its authenticity, and the transcription was played before the jury under strict admonition of the court that the jury was to ascribe to it only such weight as it merited under all of the circumstances in evidence. At the end of the playing of the recording appellant moved for a mistrial on the ground that the evidence was highly prejudicial. The court denied the motion, but again instructed the jury to observe caution in considering the contents of the tape recording and in rejecting anything which was not said in the presence of the appellant. We think that the recording was admissible and that the court below properly handled the entire matter with the jury.

▮ The question of entrapment was submitted to the jury upon a charge which was, in our opinion, a fair and clear statement of the law on the subject. Demos v. United States, 5 Cir., 1953, 205 F.2d 596, certiorari denied 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 372; Hamilton v. United States, 5 Cir., 1955, 221 F.2d 611; Rodriguez v. United States, 5 Cir., 1955, 227 F.2d 912; Kivette v. United States, 5 Cir., 1956, 230 F.2d 749.[2] It is signifi-

2. These excerpts present the gist of this portion of the charge:

"Now, it is the contention of the defendant in this case that he was entrapped into the sale of this sugar and that therefore, he should not be held accountable for any violation that is found to have resulted in such sale. Now, in that connection I instruct you that officers of the United States many [sic] not induce persons who would not otherwise have committed the crime to violate the laws and then prosecute for it. Sound public policy and decent fairness forbid it. It is not, therefore properly speaking the entrapment of a criminal that the law frowns on but the seduction by its officers to commit crime.

"Now, the gest [sic] of the defense of entrapment is the conception of the crime by the Government's agents for the purpose of prosecuting the defendant, the latter not having any previous intention to commit it. A money consideration or any other adequate motive insighted [sic] by the agent to enduce [sic] the crime may constitute entrapment, provided the conception of the criminal design originated with the Government agent and was planted by him in the mind of the accused who otherwise would not have committed the offense. * * * I instruct you that if you find in this case that the sugar was intended for use in the production of nontaxpaid whiskey and if you further find that the defendant, Mr. Chapman, had knowledge of that fact at the time he possessed it and had it in his possession, then you would look to the evidence and see whether he was induced to possess sugar so intended for illicit use, and if you find from the evidence that the inception of the crime originated in the minds of the federal officers and not in the mind of the defendant and that that thought and idea was placed in Mr. Chapman's mind by the officers and that he was induced by the officers to commit the offense, then you would return a verdict of not guilty because that may not be done. The officers may not conceive a crime and induce

cant that the appellant did not except to the charge when given or when a similar charge was given by the court in response to a question by a juror.[3]

We have considered the large number of errors specified by the appellant and find them without merit and that the case was well tried in the court below and that its judgment ought to be and it is

Affirmed.

someone to commit it and then prosecute for it."

3. In connection with several points intermingled in appellant's argument heavy reliance is placed upon Kott v. United States, 5 Cir., 1947, 163 F.2d 984, and Shively v. United States, 4 Cir., 1954, 210 F.2d 131, but a reading of the cases fails to reveal that they sustain any of appellant's contentions. He argues at various points in the brief that it was not sufficient that appellant possessed the sugar with the intention of distributing it into bootleg channels, but that the purchasers must have had the intention so to use it. No convincing authority is cited for this proposition and the law is to the contrary. Cf. Weinstein v. United States, 1 Cir., 1923, 293 F. 388; and United States v. 2265 One-Gallon Paraffined Tin Cans, 5 Cir., 1958, 260 F.2d 105, quoting on page 108 from Weinstein supra: "We think the intention referred to in the statute * * * is that of the seller alone * * *"