Julian MARKO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19925.

United States Court of Appeals
Fifth Circuit.

March 14, 1963.

Herbert A. Warren, Jr., Hilton R. Carr, Jr., Carr & Warren, Miami, Fla., for appellant.

Lavinia L. Reed, Asst. U. S. Atty., Miami, Fla., Edith House, U. S. Atty., for appellee.

Before JONES and BELL, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge.

Appellant, Julian Marko, was convicted by a jury of attempting to bribe Harry G. Gunther, an Internal Revenue Agent, in violation of 18 U.S.C. § 201. He was sentenced to three years to serve three months, with a suspension of the remainder of his sentence, and was placed on probation during the period of the sus-

pended sentence. He filed a timely motion for a new trial.

Appellant presents for consideration seven questions grounded in his six specifications of error. His first, and main, insistence concerns the admission in evidence of the corporate income tax return of Rancher Enterprises, Inc., for the year 1958, and his personal returns for the years 1958 and 1959. His second question relates to alleged error in the court's oral instructions. His third, fourth and fifth questions concern the prosecution's argument to the jury. Question six concerns the accumulation of errors which, appellant asserts, when taken as a whole had the effect of denying him a fair trial. His last question deals with the refusal of the court to give an instruction upon the defense of entrapment.

The record in this case covers 825 pages; and since the ultimate guilt of the appellant was for the jury we will not attempt to detail the evidence except as it may be pertinent to the particular questions considered.

Agent Gunther was given the assignment of investigating the liability of Rancher Enterprises, Inc., for additional excise taxes for the period of July 1, 1959, through September 30, 1960. The Government attempted to show Gunther determined that there were excise taxes due in the amount of $8,394.98; that appellant objected to a determination in that amount and suggested a bribe; that he finally did give to Gunther, who had by then contacted and alerted his superiors, the sum of $500.00 in cash in order to induce him to report taxes owing in the

amount of $2,735.21 only. Appellant denied ever having offered or given such money to Gunther, and denied any illicit purpose in his dealing with Gunther.

Rancher Enterprises, Inc., as lessee from Rancher Enterprises Service Corporation, operated a motel in Miami, Florida, and a lounge [1] and package store in the motel. Appellant was the controlling stockholder of both corporations. He was also a practicing attorney in the City of New York.

On cross-examination of appellant, the prosecution elicited information that during the period of May 23, 1958, to April 30, 1959, Rancher Enterprises, Inc., had issued salary checks to appellant in the amount of $6,125.00. Appellant did not use these checks, nevertheless they appear as deductible expense items in the corporate return covering that period. No amended return was filed. Appellant made no report on his individual returns for the years 1958 or 1959 of the receipt of any such income. Over the objections of defendant's counsel, counsel for the prosecution interrogated appellant at length about these and other matters relating to the corporate returns and respecting his personal income from his law practice and from other sources. The court admitted this testimony in evidence as well as the returns,[2] on the theory that it tended to impeach the credibility of appellant as a witness.

In the background of appellant's failure as a controlling stockholder to file an amended corporate return deleting the $6,125.00 above referred to, it is readily apparent that the large deductions disclosed by his personal returns in relation

1. Sales within the lounge were subject to the cabaret tax imposed by 26 U.S.C. § 4231(6), as amended.
2. Appellant's 1958 return reveals total income of $33,303.64, of which $15,496.21 was from his law practice, with business deductions therefrom of $15,235.94, or a net taxable income from that source of $260.27. The return shows other income of $17,807.43, with itemized personal deductions of $11,698.10, with a total taxable income, after exemptions, of only $5,169.60, and a tax of only $1,057.31.

Appellant's 1959 return reveals gross income of $38,452.42. Of this sum $27,-676.76 was from dividends and from gains on the sales of securities. Apparently the sum of $10,775.66 was realized from his law practice. There were business deductions of $12,680.03, a sum which, as will be noted, is in excess of income from his law practice. There were personal deductions of $8,858.52, with a taxable income, after exemptions, of $15,113.87, and a total tax of $3,054.16.

to total income, which resulted in the payment of a comparatively small tax for each of the years involved, gave a distorted picture of his income tax liability. The admission of the returns, together with the evidence relating to the same, had a tendency to prove that appellant had filed false returns—other and different crimes than the one laid in the indictment. The misleading tendency of this evidence was buttressed, as well as aggravated, by the closing argument of counsel for the Government.[3]

In Hargett v. United States, 5 Cir., 183 F.2d 859, at 863, this Court quoted as authority the following pertinent statement from 20 Amer.Jur., Evidence § 309:

> "To admit proof of crimes other than the particular one with which the accused is charged would inevitably lead to the inference that the depravity which motivated the previous crimes continued and was the basis for the commission of the particular crime for which the accused must stand trial, and the courts have repeatedly affirmed the impropriety of raising such a presumption of guilt by proof of other crimes. Furthermore, it is clear that evidence of other crimes compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the charge immediately before it. * * "

[1] The court erred in admitting in evidence, over appellant's objections, the income tax returns and the evidence relating to them. The fact that this evidence was offered for the purpose of impeaching the credibility of appellant and was admitted as having a tendency to that end did not justify its admission or mitigate its harmful effect. The evidence was not material to the issue on trial, and consequently had no value as impeaching evidence. 98 C.J.S. Witnesses § 633, p. 650.

The authorities cited by appellee, when analyzed in the setting of this record, fails to disclose any principle which militates against the foregoing conclusion.

Except for the question involving the failure of the court to give an instruction upon the defense of entrapment, we pretermit a decision or a discussion of the other questions presented since they need not reoccur upon a retrial.

Appellant acknowledges that there are numerous statements in decisions to the effect that the invocation of the defense of entrapment necessarily assumes that the act charged was committed.

In Hamilton v. United States, 5 Cir., 221 F.2d 611, at 614, it was said:

> "Entrapment is a valid, positive defense, in certain circumstances, the invocation of which necessarily assumes that the act charged was committed. 22 C.J.S., Criminal Law, § 45."

Following Hamilton, in Rodriguez v. United States, 5 Cir., 227 F.2d 912, at 914, the Court amplified and extended the principle there announced, saying:

> "[I]n refusing to charge the jury on entrapment, the Court stated that

---

3. "He said he got most of his money from the practice of law. And then, lo and behold, he only got $260. This is an inconsistency.

"This man is an attorney for 20 years, since 1950, in New York, where it is pretty tough to make a living. Now, that is an inconsistency, members of the jury, we submit. We asked him about the $6,125 *not reported on any of the two income statements for 1958 and 1959.* Well, he didn't cash the checks but he admitted and Mr. Gross admitted that *they didn't*

*file any amended return for that year to tell the Government,* 'Wait a minute. Ranchers Enterprises can't take this deduction.' And it doesn't make any difference whether they had any taxable income. *But the statements that you send in have to be truthful.* They have to reflect what happened. And if you take a deduction and later you don't, then I believe *the Government is entitled to know.* So, this is an inconsistency. This goes to the motive and the character of an individual who testifies on this stand."

the defense was not available where, as in this case, the defendant denies *the very acts upon which the prosecution and the defense are necessarily predicated*. It is true that this defense may be raised even though the defendant pleads not guilty, but it 'assumes that the act charged was committed' [Hamilton v. United States, 221 F.2d, supra, at page 614.], and where the defendant insists, as she did here, that she did not commit the acts charged, one of the bases of the defense is absent. * * * "

Appellant relies on Henderson v. United States, 5 Cir., 237 F.2d 169, 61 A.L.R.2d 666. That was a conspiracy case, wherein the defendant admitted the operation of the illicit distillery, but denied that he was a party to the conspiracy.[4] Some confusion appears to have arisen from the fact that the defense of entrapment is embraced within a plea of not guilty. The court attempted a clarification in Henderson, when it observed:

"Indeed, long prior to the adoption of those rules [Federal Rules of Criminal Procedure, 18 U.S.C.A.], it had been settled that the defense of entrapment was raised by the plea of not guilty. Sorrells v. United States, 287 U.S. 435, 452, 53 S.Ct. 210, 77 L.Ed. 413. The fact, however, that such a plea raised both issues, that is, that Henderson did not enter into the conspiracy charged and that he was entrapped so to do, does not necessarily mean that he can rely upon both defenses, but simply changes the form of the question by transferring it from the pleadings to the proof. * * * "

Henderson is inapposite. The court did not err in refusing to give an instruction on entrapment. There was error,

however, in the particulars hereinabove indicated and in the court's failure to grant appellant a new trial. Accordingly, the case is

Reversed and remanded.

---

4. The gist of the holding in that case pertinent to the question under consideration is summarized by the author of Corpus Juris Secundum, 22 C.J.S. Criminal Law § 45(1), at 138, as follows:

"However, in a prosecution for conspiracy to commit certain crimes, accused can admit the commission of the criminal act charged, deny being a party to the conspiracy charged, and still claim that such overt acts as he did commit were done as a result of entrapment."