**Donald Croom BEATTY, Jr., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 23226.**

United States Court of Appeals
Fifth Circuit.

May 2, 1967.

Rehearing Denied June 12, 1967.

GEWIN, Circuit Judge:

Donald Croom Beatty, Jr. was found guilty by a jury in the United States District Court for the Northern District of Alabama on June 23, 1965, on two counts [1] for the possession of a submachine gun upon which taxes imposed by law had not been paid and the unlawful transfer of the gun without having obtained a written order from the person to whom the sale was made in violation of the National Firearms Act, 26 U.S.C. §§ 5851 and 5814(a). He was committed to the custody of the Attorney General for imprisonment, observation and study as provided in 18 U.S.C. § 4208(b), or until otherwise discharged as provided by law. Beatty appeals from this conviction and we affirm.

Among those testifying at the trial, two government witnesses, Gene P. McGinnis, an Alcohol and Tobacco Tax Division Agent (ATU), and Frank Kenneth Sirles,[2] an informer for the ATU, gave testimony regarding the sale of a Russian machine gun by appellant to Sirles. The two witnesses also gave testimony concerning a post-indictment conversation between appellant and Sirles regarding the above sale.

Sirles, employed by the Homewood Printing Co.,[3] had known appellant for over a year and had purchased several guns from appellant, who owned and operated the Modern Gun Shop. Sirles testified that in the early part of December, 1964, under the direction of the ATU he negotiated with appellant for the purchase of two Beretta machine guns. Sirles reported these negotiations to agent McGinnis [4] and when Sirles went

---

L. Drew Redden, Ralph E. Coleman, Rogers, Howard, Redden & Mills, Birmingham, Ala., for appellant.

R. Macey Taylor, Asst. U. S. Atty., Birmingham, Ala., Macon L. Weaver, U. S. Atty., N. D. of Alabama, Henry C. Stockell, Jr., Regional Counsel, of counsel. Arnold S. Yorra, Atty., Internal Revenue Service, Atlanta, Ga., on the brief, for plaintiff-appellee.

Before GEWIN and AINSWORTH, Circuit Judges, and HUNTER, District Judge.

1. Appellant Beatty was indicted on four counts. However, upon the government's motion, the court ordered that count one of the indictment be dismissed. The jury returned a verdict of not guilty on count two.

2. Sirles had a prior conviction on a plea of guilty. when he was 18 years of age, to interstate transportation of a stolen vehicle and was placed on probation. He testified to this fact, thereby placing the information before the jury.

3. In fact appellant had employed Sirles at one time to print his catalog and Sirles had gone into appellant's store on several occasions to make up the catalog.

4. Apparently Sirles relationship with the ATU had just begun. Sirles had mentioned the Berettas to a friend of his who had informed the ATU. The ATU in turn contacted Sirles and suggested that he negotiate with appellant about the machine guns. Sirles agreed and thereby he became an informer. Appar-

to appellant's store to complete the transaction on December 7, 1964, he was equipped with a shortwave radio pinned to his T-shirt with a small receiving piece over his shoulder. Appellant informed Sirles that he had sold the Berettas but that he had a Russian machine gun that he would sell for $65.00. Sirles was not shown the weapon but only two of its parts, the driving rod and buffer spring. Sirles told appellant that he wanted to purchase the weapon for a truck driver going to Miami who wanted to sell it in Cuba. Sirles said he would contact appellant later about the gun.[5]

Agent McGinnis also testified as to the above conversation which had been transmitted by the equipment on Sirles person and picked up on McGinnis' radio receiver.

The witnesses testified that later that same day, Sirles and appellant arranged to meet at appellant's store and Sirles arrived with the same radio attached and, in addition, marked money. They left the store and went to appellant's home where appellant assembled the gun and described its operation. Thereafter appellant disassembled it and put the parts in two plastic bags and Sirles gave him $65.00 of the marked money. Their conversations were again overheard by agent McGinnis. According to the government witnesses, appellant wiped all fingerprints from the gun and stated that he did not wish to have his fingerprints appear on it. Sirles immediately turned the gun over to the ATU men.

Sirles also testified that shortly after appellant had been indicted, appellant telephoned and requested Sirles to meet him. Appellant likewise proposed the time and place of the meeting. Sirles then talked to McGinnis inquiring whether he should attend the meeting, and was told to do so. The meeting was held on February 18, 1965, in Sirles' automobile and McGinnis was secreted in the trunk where he overheard the entire conversation which lasted forty-five minutes. McGinnis had equipped himself with a tape-recording device which he testified failed to work, but he heard the conversation nevertheless. At this meeting appellant inquired from Sirles as to the whereabouts of the gun he had sold him and told Sirles he had a lot of illegal guns. Appellant also told Sirles that if Sirles appeared against him or if the machine gun came into court, appellant would have Shorty the Baptist take care of him.[6]

At the trial appellant denied the sale of the submachine gun to Sirles, although appellant admitted selling various parts of the gun. Appellant also pled entrap-

ently he was not paid for his services as an informer. This relationship with the ATU produced two noteworthy events in addition to supplying ATU with information. A few weeks before Sirles met agent McGinnis he had filled out an application for a Federal Firearms Permit. On the application he swore that he had never been convicted for a crime punishable by imprisonment for a term exceeding one year, which was untrue. See footnote 2 supra. At trial Sirles explained that at the time he made the application he thought the above statement did not apply to him since his conviction had not resulted in a jail sentence. A license was subsequently issued to him but after becoming associated with the ATU he asked them whether his conviction disqualified him from holding the license. Upon hearing that it did, he turned in the license. He was never prosecuted for obtaining the license. Also Sirles purchased a firearm at this same time which was duly registered for him by the ATU.

5. Sirles did not agree to purchase the machine gun at this time because his arrangements with the ATU had been to purchase the Berettas. Sirles did not know whether the ATU was interested in the Russian machine gun. Sirles testimony indicates that he was not very familiar with weapons.

6. Sirles testified that Beatty described Shorty the Baptist as "somebody that does bombings and stuff." McGinnis testified that Beatty referred to Shorty the Baptist as one Mr. Bigs who did the bombing on the Northside and that "all I have to do is to pick up the phone and call Shorty the Baptist and we will have them rubbed out. Just give them a picture and tell them where the person lives."

ment. However, the jury found him guilty of possession and transfer of the submachine gun in violation of the National Firearms Act.

On this appeal eighteen errors on the part of the district court are specified and can be grouped generally as follows: (1) overruling motions to produce the weapons described in the indictment for inspection, and overruling the defense motions for judgment of acquittal and the motion in arrest of judgment or for a new trial; (2) excusing an unqualified juror from further service on its own motion and proceeding with the remaining jurors; (3) making statements in the presence of the jury which were adversely prejudicial to appellant; (4) admitting into evidence various items of testimony, and sustaining objections to certain of defense counsel's questions; (5) refusing to submit the issue of entrapment to the jury; (6) admitting into evidence the conversations between appellant and Sirles overheard through electronic devices by government agents; and (7) admitting into evidence the post-indictment conversation between appellant and Sirles. These alleged errors will be discussed in the order as listed above.

### I

■■ An application under Rule 16, Fed.R.Crim.P. for the production and inspection of tangible articles is left to the sound discretion of the trial judge and on the record before us we cannot say that such discretion was abused.[7] Indiviglio v. United States, 249 F.2d 549 (5 Cir. 1957). Also the trial court properly overruled appellant's motions for judgment of acquittal and his motion in arrest of judgment or for a new trial in accordance with Rules 29, 34 and 33, F.R.Crim.P.

### II

■■ Even though the Sixth Amendment guarantees an accused the right to be tried by an impartial jury composed of twelve persons, Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), such right may be waived, Patton v. United States, supra; Horne v. United States, 264 F.2d 40 (5 Cir. 1959); Taylor v. United States, 142 F.2d 808 (9 Cir.), cert. den. 323 U.S. 723, 65 S.Ct. 56, 89 L.Ed. 581 (1944), as it was done here by agreement of both counsel that in the event any juror should become incapacitated, the trial could proceed as long as there were ten jurors able to serve.

### III

■ We have carefully reviewed the entire record and conclude that not only were the statements[8] made by the trial judge claimed by appellant to have cast both himself and his counsel in a bad light before the jury, not prejudicial to appellant, but that the trial judge's conduct throughout the trial was character-

---

7. Counts 3 and 4 of the indictment gave a complete and detailed description of the weapon involved in these proceedings. Such description was as follows:

 "A Submachine gun, 7.62mm, having a 10.65 inch barrel, serial number 30505, manufactured in Communist China (Chinese copy of 1941 Russian Shpagin)"

 A different weapon was described in count 2, but appellant was acquitted on that count.

8. The trial judge made three statements in the presence of the jury which appellant alleges had the effect of casting himself, his attorney and a defense witness in a bad light. The first statement was when the Judge advised defense counsel, who apparently was questioning a witness from too close a distance, that he was "going to make witnesses mad and they are going to knock your head off." The second occurred when a defense witness volunteered the statement that the appellant, by whom the witness was employed, purchased no weapons other than those that the witness was aware of, the judge volunteered that it was "very obvious" that the witness could not have "full knowledge of everything that Mr. Beatty does." And lastly, when the prosecuting attorney complained that appellant, testifying in his own behalf, was volunteering information in answer to questions on direct examination, the judge cautioned him that "you might say something your lawyer don't want you to say."

ized by complete impartiality and fairness toward the appellant.

## IV

Appellant objects to the admission of numerous items of testimony such as agent McGinnis' second recital of the post-indictment conversation, the cross-examination of appellant's character witnesses, agent McGinnis' construction and interpretation of the Federal Firearms Act, and agent McGinnis' declaration that he advised Sirles that the government did not wish to make appellant do anything he didn't intend to do. Appellant claims the above testimony was either irrelevant, immaterial and/or prejudicial.

 The admissibility of evidence in criminal cases is governed by Rule 26 of the F.R.Crim.P. Essentially, the test of admissibility is relevance and materiality. However, all evidence in a criminal case must be carefully scrutinized for the possibility of prejudice. As to weighing materiality against possible prejudice, the court concluded in United States v. Johnson, 254 F.2d 175, 176 (2 Cir. 1958): "Only if its relevancy is minimal and the chance of resultant prejudice great should the evidence be excluded."

 We have made a very cautious and careful examination of the record, particularly with reference to those portions of the testimony alleged by appellant to be inadmissible. It is our conclusion that the trial court committed no error.

 Appellant also cites as error the sustaining of an objection by the prosecution to cross-examination of the government witness, Sirles. Defense counsel sought to prove by Sirles' statements which McGinnis had made to Sirles during their various meetings and the truth or falsity of such statements. Government counsel's objection was sustained on the ground that the testimony sought was hearsay. Although the defense is permitted wide latitude in cross-examination, we do not think the trial judge's limitation of such cross-examination for the purpose of excluding hearsay testimony was an abuse of discretion.

## V

 Entrapment is established when the criminal design originates with government officials and is implanted in the mind of an innocent person so that he is induced to commit a crime which he was not otherwise predisposed to commit. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Suarez v. United States, 309 F.2d 709 (5 Cir. 1962); Rodriguez v. United States, 227 F.2d 912 (5 Cir. 1955); Demos v. United States, 205 F. 2d 596 (5 Cir. 1953). Merely affording an opportunity for the commission of a crime is not entrapment. Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, supra. Since a defendant maintains this defense by asserting that the criminal action was not contemplated by him until he was induced to commit it by a government agent, the defendant must admit that he committed the act which constituted the crime.[9] Oretga v. United States, 348 F.2d 874 (9 Cir. 1965); Marko v. United States, 314 F. 2d 595 (5 Cir. 1963); Rodriguez v. United States, supra.

Appellant offered no evidence to the effect that he was not ready and willing to sell the weapon involved in this case; nor did the appellant maintain that he

---

9. Appellant cites Sears v. United States, 343 F.2d 139 (5 Cir. 1965) in support of his contention that one may deny that he committed the act charged and at the same time maintain that he was entrapped into so doing. Sears is factually distinguishable from the present case. In Sears the defendant charged with conspiracy introduced the issue of entrapment in regard to a particular overt criminal act and the court held that his defense of entrapment was not inconsistent with his denial of the charge of conspiracy. See also Marko v. United States, 314 F.2d 595 (5 Cir. 1963).

was unduly prevailed upon to sell this weapon; nor did he contend that any undue pressures or inducements were made. There was no evidence that the sale charged was the product of the creative activity of the government agents or that the agents went further than creating a plan by which appellant would be afforded an opportunity for the commission of the offense. Moreover, appellant has consistently denied the sale of a machine gun to Sirles.

 In view of the fact that the evidence in the record as to the defense of entrapment presented no genuine issue of fact and in light of the appellant's firm denial that he ever sold the weapon as charged, it was not error for the trial judge to refuse to instruct the jury on the defense of entrapment. Lopez v. United States, supra; United States v. Place et al., 263 F.2d 672 (2 Cir. 1959); Rodriguez v. United States, supra.

### VI

 Appellant contends that to allow federal officers to testify to conversations overheard through use of a radio transmitter secreted on an informer who engages the accused in conversation by prearrangement with a government agent violates the Fourth, Fifth and Sixth Amendments. Certainly the testimony of Sirles, the informant, as to his conversations with appellant which took place in his store and home are admissible. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374; Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312. Further, recordings of conversations with defendants by the use of electronic devices concealed on the person of an informer and the testimony of persons overhearing such conversations by means of such devices are also admissible in evidence under the facts and in the circumstances presented in this case. Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 439, 17 L.Ed.2d 394; Lopez v. United States,

373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); Maddox v. United States, 337 F.2d. 234 (5 Cir. 1964); United States v. Miller, 316 F.2d 81 (6 Cir. 1963); Chapman v. United States, 271 F.2d 593 (5 Cir. 1959).[10]

Those situations in which electronic eavesdropping has not withstood constitutional challenge are limited to those circumstances in which the electronic devices accomplished an unauthorized physical penetration into constitutionally protected premises occupied by the accused. Such forceful intrusion into protected areas violates the Fourth Amendment. Clinton v. Virginia, 377 U.S. 158, 84 S.Ct. 1186, 12 L.Ed.2d 213 (1964) reversing Clinton v. Commonwealth, 204 Va. 275, 130 S.E.2d 437 (1963); Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942); Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); Katz v. United States, 369 F.2d 130 (9 Cir. 1966); Cullins v. Wainwright, 328 F.2d 481 (5 Cir. 1964).

The conversations heard by federal officers between Sirles and appellant through the use of electronic equipment were those which took place in appellant's place of business and at his home through a purely voluntary arrangement between Sirles and the appellant. In fact the transactions overheard on the radio receiver constituted the commission of the crime with which appellant was later charged. The electronic device occasioned no trespass to appellant's privacy. It was carried into appellant's premises on the person of Sirles. There is not even the slightest hint that Sirles was not welcome in appellant's store or home. In fact the history of dealings between Sirles and appellant indicates that Sirles "entered a place of business with the consent, if not by the implied invitation" of appellant. On Lee, supra,

10. Apparently the District Court of Appeal of Florida (3 Cir.) disagrees with our interpretation of the cited cases. Hajdu v. State, 189 So.2d 230 (1966).

72 S.Ct. at 971, 96 L.Ed. at 1274. Although the occasions in which Sirles entered appellant's shop and home clothed with the concealed transmitter were prearranged by Sirles and the government agents, the device, being on Sirles person, was not illegally implanted in appellant's premises. Therefore, there has been no fourth amendment violation and consequently the government agents' testimony regarding the conversations overheard by use of the electronic transmitter and receiver is admissible.

We find nothing in the circumstances disclosed by the record in this case by which these conversations were overheard that violates appellant's rights under the fifth and sixth amendments. Appellant's reliance on Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) to support his contentions that his constitutional rights have been violated will be discussed in the next section.

### VII

■ Appellant contends that the admission of the testimony of both Sirles and McGinnis as to the post-indictment conversation between appellant and Sirles constituted reversible error. In support of this contention appellant relies on Massiah v. United States, supra, in which the Supreme Court reversed a conviction on the ground that admitting into evidence the post-indictment conversation between the accused and a secret informer in the absence of counsel violated the accused's right under the Sixth Amendment. We have made a very careful study of the *Massiah* opinion and are convinced that the facts in this case are so clearly distinguishable from those in *Massiah* that the application of the "Massiah doctrine" is unwarranted.

In the *Massiah* case the petitioner (Massiah) and one Colson were indicted for violating the federal narcotics laws. Massiah retained a lawyer, pleaded not guilty and was released on bail along with Colson. Without Massiah's knowledge, Colson decided to cooperate with the government. Colson permitted a radio transmitter to be installed in his automobile by means of which a government agent equipped with an appropriate receiving device could overhear conversations carried on in Colson's car. Acting under a government agent's direction, Colson *induced* Massiah to *enter* his parked car and then *induced* him to *talk* about the case. Colson and Massiah held a lengthy conversation while the agent sat in a car parked out of sight down the street and listened to the entire conversation. Massiah made several incriminating statements during the course of this conversation. At trial the government agent testified as to the incriminating statements overheard by means of the electronic equipment. The jury convicted Massiah of narcotics offenses and the convictions were affirmed. The Supreme Court reversed on the ground that Massiah's sixth amendment rights were violated by the use in evidence against him of post-indictment statements deliberately elicited from him by government agents in the absence of his retained counsel.

■ In its opinion the court reiterated the specific guarantee of the sixth amendment that one is entitled to the aid and assistance of counsel not only during trial but also during the critical period immediately preceding, from the time of indictment to time of trial. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed 158 (1932). This right to counsel clearly means that an accused is entitled to have his counsel present when he is being interrogated by the police unless such right is expressly waived. See Spano v. People of State of New York, supra. Therefore, the court held that the petitioner was denied the basic protection of the sixth amendment when there was used against him at his trial his own incriminating statements which federal agents had deliberately elicited from him in the absence of his counsel. The court

did not restrict this rule of exclusion to testimony elicited from an accused at a police station but held that any incriminating statements resulting from indirect and surreptitious interrogation were inadmissible.

■ In conclusion the court stated: *"All that we hold* is that the defendant's own incriminating statements, obtained by federal agents *under the circumstances here disclosed,* could not constitutionally be used by the prosecution as evidence against him at his trial." [11] (Emphasis added)

We interpret this language as meaning that the exclusionary rule does not apply to all incriminating statements made under any circumstances by an accused after his indictment, but such rule only applies to those statements induced or deliberately elicited by officers or their agents from the accused after his indictment while he is without assistance of counsel. An examination of cases decided since *Massiah* supports this conclusion.

The *Massiah* doctrine was held to apply in Clifton v. United States, 341 F. 2d 649 (5 Cir. 1965) where prior to indictment appellant was questioned by FBI agents while in jail without the aid of his counsel. During the interrogation appellant made incriminating statements. The court held such statements to be inadmissible under *Massiah* and Escobedo v. State of Illinois, 378 U.S. 478,

84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) [12] for they were elicited during police interrogation at a time when the appellant was entitled to counsel.[13]

However, the following cases are illustrative of situations where incriminating statements were made without counsel but such statements were held to be beyond the exclusionary rule of *Massiah*. The appellant sought a reversal in United States v. Gardner, 347 F.2d 405 (7 Cir. 1965) on the ground, inter alia, that the trial court committed error in admitting into evidence incriminating statements he had made to Deputy Marshal Fisher. The statements referred to above were made several days after appellant's indictment while Fisher was taking appellant and another prisoner, Belcher, by automobile to confer with their attorney. Fisher overheard Belcher and appellant discussing their attempts at burglary and even joined in the conversation by making a remark about the attempt at burglary made by appellant's two co-defendants. Fisher testified at the trial as to the above conversation. Although appellant urged that the trial court's refusal to exclude Fisher's testimony was reversible error under *Massiah* the Seventh Circuit held that appellant's admissions were voluntary and were not deliberately elicited.

After indictment in the case of United States v. Accardi, 342 F.2d 697 (2 Cir. 1965) the appellant volunteered certain

---

11. The circumstances involved are disclosed by the opinion of Judge Lumbard when the *Massiah* case was before the Second Circuit, 307 F.2d 62. From the facts there stated, particularly on pages 66 and 67 of the opinion, the government agent contacted Massiah "to *procure* and listen to his conversation". Colson, the government witness involved, was acting on behalf of the government "in *inducing* Massiah to *enter* the Chrysler and *talk* about the case." Colson contacted Massiah under "instructions from the investigator" and such instructions were "no more than to *induce* Massiah to talk". (Emphasis added) The opinion discloses that *deception* was used on Massiah and he was *interrogated* by Colson at the request of the government.

12. While *Massiah* spoke of the right to counsel beginning at arraignment, *Escobedo* held that an accused has the right to consult with his counsel "when the process shifts from investigatory to accusatory." 84 S.Ct. at 1766, 12 L.Ed.2d at 987.

13. In *Clifton* the accused was only 19 years of age, counsel had been appointed for him and had visited him repeatedly. He had been confined in jail for over two months and testified that he was confined in a solitary cell for a month immediately preceding his interrogation. Clifton further testified that as he was being taken from his cell to a small interrogation room he asked for his attorney to be present but the "Captain" evidently failed to contact the attorney.

incriminating statements to a government agent at a gas station when the agent had come to serve a subpoena on appellant's brother-in-law. The agent's testimony as to the conversation was held admissible because the conversation was initiated entirely by appellant, there was no inducement offered him to make the statements, nor were they made because of any deception practiced upon him or through an attempt by the agent to interrogate him.

In Stowers v. United States, 351 F. 2d 301 (9 Cir. 1965) appellant's co-defendant engaged appellant in a conversation in their joint cell about the offense for which they had been indicted. The co-defendant subsequently testified at appellant's trial as to the ensuing conversation. Although appellant contended that the co-defendant had been directed by the government to act as its agent in order to elicit incriminating statements from him, the evidence did not show such a plan on the part of the government and therefore the co-defendant's testimony was held to be admissible. Similarly, in Paroutian v. United States, 370 F.2d 631 (2 Cir. 1967) where appellant made incriminating statements to his cellmate, the cellmate's testimony was admitted into evidence. The court stated that Massiah only excluded statements made as a result of interrogation by a government agent. The cellmate was not a government agent nor did he interrogate the appellant.

From these cases we think it is quite clear that the Massiah decision only applies where government agents have premeditatively approached the accused with the intention and design of inducing him to make incriminating statements while unaided by his counsel. Although the facts in Massiah demonstrate that a secret government informer was used as part of the government's plan to induce and obtain incriminating statements from the accused, we do not think the court held that all statements made by an accused to an unknown informer are inadmissible. The decision only renders inadmissible those statements made as a result of the acts of a secret informer in the same circumstances it renders inadmissible statements resulting from the acts of a known law officer, i. e. when such informer or officer actively and deliberately induces the accused to make such admissions.

Of course, the use of secret informers is by its very nature a deceptive practice in a general sense. However, the Supreme Court has not held that being deceived in this respect violates any constitutional right. It is when the accused is the victim of a plan to deliberately elicit harmful information from him after indictment and in the absence of counsel that one's constitutional rights come into focus under the teachings of Massiah.

In Massiah the entire operation was government sponsored. Here the government agents did not instruct Sirles to engage the appellant in conversation or even to associate with him. The meeting at which the incriminating statements were made was not suggested by Sirles but by the appellant himself. Sirles did not question or interrogate appellant or attempt in any way to get him to talk about the sale of the machine gun, but appellant voluntarily spoke of the weapon. In fact, the testimony indicates that the very purpose of the meeting was to find out exactly what Sirles had done with the weapon and to thwart any possibility that Sirles might testify about his purchase of it. Hence, the record shows not only that Sirles did not induce appellant to talk but that appellant needed no encouragement. Appellant wanted to talk to Sirles and he simply did just that. While constitutional rights must be fully protected, we are not inclined to approve the conduct of a defendant which is deliberately designed to deter a witness from coming boldly to the witness chair to testify. It is true that Sirles informed the government agents of appellant's request to meet him, the agents told Sirles to attend the meeting as requested and an agent was secreted in the trunk of Sirles' car. Nevertheless, sanctioning the

presence of an informer at a meeting called by the accused and even sending an agent to listen in on the conversation cannot be equated with procuring or deliberately eliciting information from an accused. Generally a secret informer can testify to such pertinent facts as are known to him to the same extent that a non-secret informer can testify.

Government agents are not required to turn a deaf ear at the first sign that an accused is going to voluntarily admit his wrongdoing. If the accused voluntarily desires to talk about his illegal activities, government agents are not compelled to excuse themselves but they may even listen with impunity. However, we wish to emphasize again that government agents are forbidden to *contact* and *induce* or *encourage* an accused to talk in order to *obtain, procure* or *elicit* information from him at a time when he is entitled to counsel, but such counsel is not present.

Having found no reversible error, we affirm.

Judgment affirmed.

AINSWORTH, Circuit Judge (dissenting):

I regret that I cannot agree with the majority opinion in this case. The following are my reasons:

Appellant, an authorized firearms dealer, owner and operator of the Modern Gun Shop, in Birmingham, Alabama, was convicted of a violation of the National Firearms Act largely on the testimony of a secret Government informer named Sirles, who is an ex-convict, having been convicted when 18 years of age on interstate transportation of a stolen vehicle and placed on probation, and the testimony of Federal Alcohol and Tobacco Tax Agent McGinnis, for having unlawfully sold a submachine gun to Sirles. Appellant denied the sale of the gun but admitted selling some of the parts of such a gun to Sirles. He also pled entrapment. Numerous errors are specified by appellant. However, I will consider only one specification which in my opinion is sufficient to require reversal of the conviction and a new trial. This specification, made by appellant for the first time on appeal, relates to the admission of the alleged prejudicial testimony by the secret informer, Sirles, and Agent McGinnis. Sirles testified that eight days *after* appellant's indictment and before his trial, appellant, then free on bail, telephoned Sirles asking that he meet him. Sirles was not known to appellant to be a Government informer. Nor was appellant aware that prior thereto, on December 7, 1964, the date of the alleged offense, in the several meetings Sirles had that day with appellant to consummate the sale of the gun, Sirles had been equipped by Agent McGinnis with a miniature radio transmitter which he wore on his person, allowing Agent McGinnis to hear electronically all of the conversations between them. As a result of appellant's call, Sirles telephoned Agent McGinnis, inquiring whether he should attend the meeting, and was told to do so by McGinnis. The meeting between appellant and Sirles was held on February 18, 1965 in Sirles's automobile and Agent McGinnis was secreted in the trunk where he overheard the entire conversation between Sirles and appellant which lasted about forty-five minutes. McGinnis had equipped himself with a tape-recording device which he testified failed to work, but he heard the conversation nevertheless.

Both Sirles and McGinnis then testified at appellant's trial to the conversation between Sirles and appellant, much of which testimony was highly damaging and prejudicial to appellant. These witnesses testified that they heard appellant ask Sirles what he had done with the submachine gun he had sold him, and Sirles said he had given it to a truck driver in Miami, Florida. Sirles testified that appellant told him he had quite a few illegal tommy guns; that he was worried about the gun he sold him and threatened Sirles that if he appeared against him or the gun ever came into court, somebody named Shorty the Baptist would take care of him. Agent McGinnis corrobo-

rated Sirles's testimony. He said that he heard appellant ask what Sirles had done with the submachine gun he sold him and Sirles replied that he sold it to a Miami truck driver; that appellant said the gun had better not turn up in court; that all appellant had to do was pick up the phone and call Shorty the Baptist and they would be "rubbed out"; that for every legal gun, appellant had an illegal one.

Appellant relies on the Supreme Court's decision in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), in support of his contention that admission of the testimony of Sirles and McGinnis to the conversation between appellant and Sirles in the automobile constituted reversible error. In *Massiah*, evidence was used against the accused of incriminating statements made by him to a co-defendant after their indictment and release on bail and in the absence of Massiah's counsel. The statements were overheard on radio by a Government agent without defendant's knowledge that his co-defendant had decided to turn informer or that he had permitted a Government agent to install a radio transmitter under the front seat of co-defendant's automobile. The Supreme Court held that defendant's Fifth and Sixth Amendment rights relative to the privilege against self-incrimination and to the aid of counsel had been violated by use of defendant's incriminating statements in evidence against him.

The majority opinion attempts to distinguish *Massiah,* arguing that it differs on the facts because the idea of the meeting in *Massiah* at which the federal agent surreptitiously overheard incriminating statements by defendant to his co-defendant originated with the Government, whereas in the present case the suggestion for the meeting is said to have originated with appellant. The majority opinion argues that there was no deliberate plan by the Government to obtain incriminating statements from appellant, which statements were voluntarily made by him subsequent to his indictment and while he was purportedly attempting to intimidate Sirles from testifying against him at the trial. The majority opinion states that several decisions rendered since *Massiah* lend support to its holding that there has been no invasion of appellant's constitutional rights since his statements to the secret informer, Sirles, overheard by Agent McGinnis, were voluntary and not deliberately elicited. The majority cites United States v. Gardner, 7 Cir., 1965, 347 F.2d 405, where a deputy marshal taking a defendant and another prisoner to a federal building to confer with their attorneys overheard an incriminating conversation between the two prisoners, and was allowed to testify to it and the Seventh Circuit affirmed. Also cited is United States v. Accardi, 2 Cir., 1965, 342 F.2d 697, where the defendant volunteered certain incriminating statements to a Government agent who had come to a gasoline station to serve a subpoena on defendant's brother-in-law. In the cited case conversations were initiated by defendant with the Government agent who was present for an entirely different reason than to interrogate the defendant, and in fact did not ask a single question of defendant concerning the facts of the case. The statements were admitted. Another citation is that of Stowers v. United States, 9 Cir., 1965, 351 F.2d 301, which involved a prisoner in the same cell with a defendant who testified to incriminating conversations with him. The Ninth Circuit affirmed, stating that there was no evidence to support appellant's contention that the cellmate was acting as an agent or in behalf of the Government. Finally, the majority cites Paroutian v. United States, 2 Cir., 1967, 370 F.2d 631, where appellant made incriminating statements to his cellmate who informed federal authorities that the statements had been made and offered to testify to them. The cellmate's testimony was admitted into evidence and the conviction affirmed. None of the cited cases is applicable on the facts to the present case and all are clearly distinguishable.

Agent McGinnis' presence secretly in the trunk compartment of Sirles's vehicle was not mere chance or accident. Though appellant is said to have initiated the meeting with Sirles, the secret eavesdropping setup was the result of deliberate prearrangement by McGinnis with the secret informer Sirles for possible use at appellant's trial. When McGinnis told Sirles to go ahead with the meeting with appellant and hid himself in the trunk of the car and equipped himself with a recording device, the inference is inescapable that he expected appellant to incriminate himself during the meeting and that he wanted a recording of the conversations for use at the trial of the then pending indictment. Sirles must have realized that McGinnis wanted something incriminating out of appellant's mouth; otherwise, it would have been pointless for McGinnis, with tape recorder, to hide in the trunk of Sirles's automobile. Sirles was cooperating fully with the Government to help convict his own business customer by being a secret Government informer. Appellant did not know that Sirles was a Government informer nor was he aware that McGinnis was secreted in his trunk with a tape recorder overhearing everything that was said. This conversation and the statements purportedly made by appellant cannot be said to have been voluntarily and deliberately made with full knowledge of the identity of Sirles or of the presence of McGinnis. They were made, of course, without counsel for appellant being present. No specific objection to this testimony of Sirles and McGinnis was made at the trial but admission of such highly prejudicial testimony was plain error, affecting substantial constitutional rights which should be noticed, and we are left with grave doubt whether a conviction would have resulted under the circumstances. See Rule 52(b), Fed. R.Crim.P.; Landsdown v. United States,

5 Cir., 1965, 348 F.2d 405; Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). In *Massiah*, as here, there was no objection to the admission of the *Massiah* conversations with his codefendant at the time of trial. See United States v. Massiah, 2 Cir., 1962, 307 F.2d 62, at 65.

During the critical period of the proceedings, from the time defendant is charged until his trial, he is as much entitled to the aid of counsel as at the trial itself. Cf. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Clifton v. United States, 5 Cir., 1965, 341 F.2d 649. Since Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the fundamental constitutional right under the Sixth Amendment to the assistance of counsel in the defense of all criminal prosecutions in federal courts has been scrupulously maintained. To deny him this right by secret post-indictment and before-trial eavesdropping of conversations with a secret informer, and then recount the prejudicial incriminating statements of appellant at his trial, is to deprive appellant of the effective assistance of counsel at a stage when such advice would have helped him. See Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959). Cf. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] The surreptitious post-indictment conversations and eavesdropping were unlawful and thus contravened the constitutional rights of appellant.

Though appellant's statements to Sirles in the automobile were voluntary, they do not differ in that regard from those of *Massiah* which were likewise completely free from coercion.[2]

In Spano v. People of State of New York, supra, Mr. Justice Douglas point-

---

1. See also O'Brien v. United States, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94, decided March 20, 1967, involving electronic eavesdropping or wire tapping after indictment where a conviction was

set aside and new trial ordered by the Supreme Court in a per curiam opinion.

2. See the Supreme Court, 1963 Term, 78 Harv.L.Rev. 143 at 221.

194

ed out that the indictment marks the beginning of legal proceedings against a defendant. Having reached the indictment stage and while awaiting trial, appellant was entitled to counsel at every stage of the proceedings thereafter, including the time of the meeting in Sirles's automobile. With benefit of counsel, it is doubtful that appellant would have engaged in the conversation which was related to the jury by Sirles and McGinnis. As was said in 49 Minn. L.Rev. 49 at 57 (Enker and Elsen, *Counsel for the Suspect*), "The real issue presented in *Massiah* is whether law-enforcement officials may seek evidence from an accused's own mouth when the accused does not realize that he is talking to such officials and is providing them with evidence that will help to convict him." In Lyles v. Beto, 5 Cir., 1964, 329 F.2d 332, this Circuit affirmed denial of habeas corpus relative to a state court conviction which was based upon a written confession voluntarily made by the defendant after indictment but before appointment of counsel. On certiorari the Supreme Court, in a memorandum per curiam, vacated the judgment and remanded the case for reconsideration in light of Massiah. See 379 U.S. 648, 85 S.Ct. 613, 13 L.Ed.2d 552. Though the majority states that *Massiah* is applicable only to the facts and circumstances of that case, it is clear that legal principles have evolved from *Massiah* which are applicable here and that once a person is indicted in a criminal case he has a right to counsel before and during the trial and his voluntary conversations and admissions made out of court to secret Government informers, overheard surreptitiously by Government agents, are inadmissible in evidence in the absence of an express waiver by the defendant.

In my view, admission of the testimony of Sirles and McGinnis to the surreptitiously overheard post-indictment conversations was seriously prejudicial error sufficient to require reversal of the conviction and the granting of a new trial.

I respectfully dissent.