Burke, J. (dissenting).
I cannot concur in the compulsion felt by my brethren to misapply the clear and precise holdings of certain prior decisions, the most recent of which is People v. Arthur (22 N Y 2d 325).
At 6 :50 a.m., on March 16, 1965, George McKie reported the discovery of a body to the Nassau County Police. "As a result of this “connection” with the decedent, he became the object of a lengthy inquiry concerning his own activities and his knowledge of the crime. As the majority indicated, this “ interrogation proved fruitless, for he neither confessed nor made a single damaging admission.” "When this custodial interrogation was concluded, the officers of the Nassau County homicide squad *30 arrested the defendant and charged him with three unrelated misdemeanors. An attorney was assigned to represent titm on these charges. Ultimately, McKie pleaded guilty to one of the offenses and received a sentence of six months, which he served.
The events following his release have been recited by the majority and need not be repeated. It is sufficient to note that the defendant then assumed an attorney-client relationship with Ms assigned counsel, Patrick Adams, Esq., and that the police were thereafter continually requested not to question McKie in the absence of his counsel. Detective Bonora consistently disregarded the attorney’s directive and, after each questioning session, Adams’ sole recourse was to renew his request that the attorney-client relationship be honored.
Undaunted by these requests, and indeed in complete disregard of them, Detective Bonora -set out with two -other -officers on May 18, 1966—14 months after .the commission of the crime and the first interrogation -of the defendant—to look for McKie and again question him about his involvement in the -crime. No other purpose is given for this harassment, and it may be presumed that Detective Bonora was again attempting to obtain some incriminating or contradictory statement from the person he had suspected as the culprit from the very day the crime was committed. His persistency brought forth -an incriminating admission by McKie.
The question to be resolved on this appeal is whether the -statement made by tMs ‘ ‘ prime suspect ’ ’ under these circumstances is admissible in evidence against him. The holding and spirit of -our prior decisions, -of which Arthur i-s but the latest, clearly indicate that the statement is inadmissible. Precedent notwithstanding, the majority has concluded that the ‘ ‘ fact that the police knew that the defendant was represented by counsel is not -significant ” and does not render the statement inadmissible.
The argument that the admissibility of the -statement in the nature of -a confession or admission is to be determined -solely upon the voluntariness of that statement was made 1-ong ago and decisively rejected by this court. (People v. Di Biasi, 7 N Y 2d 544, 552; see, also, People v. Meyer, 11 N Y 2d 162; People v. Friedlander, 16 N Y 2d 248.) The question then is this-—Did the officers violate McKie’s rights under the Sixth Amendment by questi-oMng him in the absence of counsel? The majority is *31 of the opinion that the Sixth Amendment does not apply until “the police have taken an accused into custody or deprived him of his freedom of .action in any significant way ’ Such reasoning confuses the Fifth with the Sixth Amendment and, by ¡so doing, distorts prior decisions of this court.
In People v. Donovan (13 N Y 2d 148) the defendant was first being interrogated the day after a payroll guard had been shot to death. He was neither arraigned nor indicted at that time. During the course of this interrogation he gave a ¡statement to the police, while an attorney was outside the interrogation room, seeking access to him. The majority there held that the statement, given after counsel had unsuccessfully requested permission to .see the suspect, was inadmissible. “ Just as * * * we condemned post-arraignment and post-indictment questioning * without the protection afforded by the presence of counsel ’ * * *, so here we condemn continued incommunicado interrogation of an accused after he or the lawyer retained by him or his family has requested that .they be allowed to confer together ’ ’ (13 N Y 2d, at pp. 152-153, supra).
Shortly thereafter, in People v. Failla (14 N Y 2d 178), three Judges concurred in the determination of the court holding a ■statement inadmissible under constraint of Donovan. In their memorandum, it was ¡stated "The court has decided that a confession conoededly voluntary in fact is inadmissible even though obtained from the defendant during a period of legal detention because counsel was denied access by the police during the taking of the statement.” (14 N Y 2d, at p. 183, supra; emphasis in original.)
In People v. Gunner (15 N Y 2d 226) the court again commented upon the .true meaning of Donovan. “ As is manifest, ¡our decision in Donovan sought to prohibit the police from questioning a ¡suspect, in the absence of counsel, after an attorney has been retained to represent him and has apprised the police of his retention. It follows, therefore, that once a retained attorney contacts the police officer in charge and informs him, as in the present case, that he represents the ¡suspect and does' not want any ¡statements taken from him, the police are precluded from thereafter questioning him or, if they do, from using against him any .statements which he made in the absence of counsel ” (15 N Y 2d, at p. 232, supra). Chief Judge Fuld’s *32 reference to “ the present case ”, while intended to refer to Gunner, is equally applicable to the case at bar.
The effect of the right to counsel upon .the .admissibility of incriminating statements was again before this court in People v. Sanches (15 N Y 2d 387). In that case, the defendant made •statements to the police and ah assistant district attorney at a station house after an attorney, previously retained by him, had requested permission to see him. In holding that the statements were inadmissible, this court said “ The significant or operative fact in such cases [referring to Donovan, Failla and Gunner] is that the defendant confessed or otherwise incriminated himself while being interrogated by the police in the absence of counsel after he had requested the aid of ,an attorney or one retained to represent him had contacted the police in his behalf ” (15 N Y 2d, at p. 389, supra).
The facts were somewhat different in People v. Vella (21 N Y 2d 249), but the holding of the court was totally consistent with prior decisions. The defendant in that case was arraigned in the New York City Criminal Court on a charge of criminally receiving .stolen property. Counsel was assigned and the trial was adjourned. Defendant was released .upon his own recognizance and was then arrested as he left the courtroom by the State Police and taken to another county where he was questioned— in the absence of counsel—concerning the burglary of a private home. The court acknowledged that the crimes charged were indeed separate and distinct offenses. Nevertheless, if was held that the law enforcement officials acted improperly .when they proceeded to question Vella in the .absence of counsel. Significantly, the case did not involve either a request for counsel or the refusal to permit an attorney access to his client. Instead, • the ratio decidendi was simply this — the officers knew that the defendant was represented by an attorney at that time and it was, therefore, improper for them to question him in the absence of counsel.
In this setting, the court was .recently asked to determine in People v. Arthur (supra) whether a written confession made by the defendant while his attorney was seeking, to assist him was admissible at his trial. In holding the confession inadmissible, Judge .Scileppi wrote': "Once an attorney enters the proceeding, the police may not question the defendant in the absence of coun *33 sel unless there is an affirmative waiver, in the presence of the attorney, of the defendant’s right to counsel (People v. Vella, 21 N Y 2d 249) ” (22 N Y 2d, at p. 329, supra).
Arthur represents the most recent pronouncement of this court concerning the right .to counsel. In this sense, the decision purported to he nothing more than a determination of the right to counsel, based upon prior decisions of this court. Today, we are told that “ Arthur simply recognized, as did the cases which came before it, that the criminal proceeding commences with formal custody and, if a defendant in fact is represented by counsel, and the police know it, they may not question him in ■the absence of counsel.”
As I read the prior decisions of this court, they unequivocally establish that, once the attorney-client relationship is in existence, the police cannot thereafter ignore it. Any attempt to do so will result in the inadmissibility of a subsequent statement or confession. In Vella, for instance, the defendant had been released upon his own recognizance. The period of “ custodial interrogation ” had concluded. Nevertheless, the attorney-client relationship continued. Similarly, in Massiah v. United States (377 U. S. 201), Federal agents had elicited incriminating statements from the defendant while he was free on bail at a time when his retained counsel was not present. While it cannot seriously be contended that the defendant was in "custodial interrogation ’ ’ at this time, the statements obtained by the authorities were nevertheless held' inadmissible. In reaching this result, the Supreme Court acknowledged that it was entirely proper for the Federal authorities to continue their investigation of the suspected criminal activities of the defendant. However, this investigation could not be conducted in such a way as to infringe upon the defendant’s right to counsel. (See, also, Beatty v. United States, 377 F. 2d 181, 188-189, revd. 389 U. S. 45.)
These cases illustrate the true nature of the right to counsel and the Sixth Amendment, for they clearly hold that the attorney-client relationship, once established with reference to a particular situation, is indestructible. The present attempt to restrict the constitutional right to counsel to those periods when the defendant is in “ custodial interrogation ” merely confuses the *34 Fifth with the Sixth Amendment in such a way as to ignore the clear and unequivocal determinations of such cases as People v. Vella (supra) and Massiah v. United States (supra).
To conclude, once an individual’s right to counsel attaches, the police may not bypass counsel and question the accused directly. "Whether the physical setting at the time is one of "custodial interrogation ’ ’ is immaterial. It is also no excuse to say that the violation of this most important right is justified by the ultimate admission of the defendant.
The judgment of the Appellate Division should be reversed.
Judges Bergan, Breitel and Jasen concur; Judge Burke dissents and votes to reverse in a separate opinion in which Chief Judge Fuld concurs.
Judgment affirmed.